ORIGINAL

FILED

04 SEP 30 PM 4:57

NORTHERN DISTRICT OF OHIO
TOLEDO

ISSUED TO ATTORNEY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**BUCKEYE CABLEVISION, INC.,**

Plaintiff,

- against -

STEVEN KING,

Defendant.

**COMPLAINT**

Civil No. 3:04CV7618

Plaintiff, **BUCKEYE CABLEVISION, INC.,** by its attorneys, LONSTEIN LAW OFFICE, P.C., complaining of Defendant herein respectfully sets forth and alleges, upon information and belief, as follows:

**JURISDICTION AND VENUE**

1. This action arises under of 47 U.S.C. §605(a) and §553(a)(1).

2. This Court has original jurisdiction over this action under 28 U.S.C. §1331 and supplemental jurisdiction over the state law claims under U.S.C. §1367. Venue is properly established in the Northern District of Ohio, Western Division, pursuant to 28 U.S.C. §115(a)(2),

and defendant resides in Lucas County, Ohio, which is within the Northern District of Ohio, Western Division.

## PARTIES

3. Plaintiff is located at 5566 Southwyck Blvd., Toledo, Ohio 43614-1578.

4. At all times hereinafter mentioned, defendant, **STEVEN KING**, is an individual having a principal residence at 704 Federal Street, Toledo, OH 43605.

## SUMMARY OF CLAIMS

5. Upon information and belief, Defendant, **STEVEN KING** (hereinafter referred to as "Defendant"), obtained and used cable television decoding devices which enabled Defendant to intercept programming services belonging to **BUCKEYE CABLEVISION, INC.** (hereinafter referred to as "Plaintiff"), without Plaintiff's authority. The conduct alleged against Defendant is in direct violation of 47 U.S.C. §605(a) and §553(a)(1), as well as O.R.C. Ann. §2307.62, which were specifically designed to prohibit the unauthorized reception of cable television programming.

6. This action seeks declaratory and injunctive relief and monetary damages based on Defendant's statutorily prohibited tampering with Plaintiff's cable television system and unauthorized reception of Plaintiff's private telecommunications signals through the use of compatible bootleg "pirate" converter-decoder devices to descramble and receive Plaintiff's scrambled telecommunications signals without its authorization. The individual Defendant has been engaged in the unauthorized reception and interception of Plaintiff's cable television programming services by use of unauthorized, modified "pirate" cable television descrambling and decoding devices and equipment. The conduct alleged against Defendant is in direct violation of 47 U.S.C.

§605(a) and §553(a)(1), which were specifically designed to prohibit the unauthorized reception of cable television programming.

**FACTUAL BACKGROUND**

**THE CABLE OPERATOR**

7. Franchises have been duly awarded to Plaintiff, pursuant to which it has the right to construct, operate and maintain cable television systems in parts of Lucas County, Ohio, as well as in other counties. Plaintiff offers cable television services to subscribers who request and pay for them.

8. Plaintiff's programming is offered to its subscribers in "packages" of programming services. "Basic" and "Standard" tiers are packages of programming services which a subscriber receives at a monthly rate. Subscribers may also elect to purchase certain "premium" programming services, such as Cinemax, Home Box Office and Showtime, for an additional monthly charge per service.

9. Additionally, Plaintiff offers pay-per-view programming, a service which enables Plaintiff's subscribers to purchase individual movies, sporting events, or other entertainment for a per event fee over and above the subscriber's regular monthly fee for cable television service.

10. Each subscriber is entitled to receive only that level of programming services which he or she selects and purchases.

11. The signals for all of Plaintiff's cable television services are transmitted to Plaintiff's reception facilities from orbiting satellites and other means of over-the-airs radio communication. Plaintiff thereafter retransmits these same signals to subscribers' homes and businesses through a network of cable wiring and equipment (the "System"). In order for subscribers

to receive these transmitted cable television signals on their television sets, Plaintiff provides each subscriber with a device known as a "converter" which converts the multiple signals simultaneously transmitted over the System into different "channels," which can be viewed on subscribers' television sets.

12. To prevent subscribers from receiving programming services for which they have not paid, Plaintiff encodes, or "scrambles," the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with a device known as a "descrambler" or "decoder," which is incorporated into the converter. The descrambler decodes the scrambled service so that the programming selected and purchased can be viewed clearly on the subscriber's television set. Programming services not purchased will continue to be scrambled and, therefore, will be unviewable on the subscriber's television set.

13. Plaintiff's system is "addressable," which means that the converter-decoder Plaintiff provides to each subscriber is programmed by a central computer to authorize viewing of only programming services purchased by that subscriber. Each subscriber who purchases services which are scrambled will have his or her decoder programmed by Plaintiff's central computer to receive only those services selected and purchased.

14. Encoding, or "scrambling," is a primary security method employed by Plaintiff and other cable television operators to prevent subscribers from receiving services for which they have not paid.

15. It is possible for a dishonest individual to install an unauthorized or "pirate" converter-decoder (one illegally programmed to descramble all of Plaintiff's programming services without plaintiff's authorization) onto Plaintiff's cable television system or otherwise tamper with Plaintiff's equipment in order to receive all of Plaintiff's scrambled programming without authorization and without making payment therefor.

16. Pay-per-view, which is one of the scrambled services, includes selections which typically range in cost from approximately $4.00 to $49.99. Pay-per-view programming is available throughout the day on a per event or movie basis. Premium services range in cost from approximately $10.00 to $30.00 per month per service. Plaintiff verily believes the value of the available Premium Services exceeds $7,500.00 per month.

17. Theft of cable service has a negative impact on the various political subdivisions within Lucas County, which derive franchise fees from a cable operator's gross revenues. The lost cash flow to cable operators adversely affects the ability of a cable operator to purchase and maintain a high quality of programming services for its subscribers. Cable piracy also creates an unfair subsidy to "freeloaders," which is paid for by honest, paying subscribers. Furthermore, the maintenance of unauthorized connections and use of pirate converter-decoders results in signal "leakage," which violates FCC regulations and for which Plaintiff may suffer the imposition of substantial fines and other sanctions.

18. Plaintiff's signal is a private telecommunication not intended for public use or enjoyment without Plaintiff's prior authorization.

## DEFENDANT'S MISCONDUCT

19. Defendant **STEVEN KING,** has been engaged in the ongoing unauthorized reception and interception of Plaintiff's cable television programming services by their respective use of "pirate" cable television descrambling and decoding devices and equipment purchased by Defendant as a manufacturer and distributor of "pirate" cable television decoding devices, to obtain and use cable television decoding devices which enabled the Defendant to intercept Plaintiff's programming services without authority. The conduct alleged against the Defendant is in direct violation of 47 U.S.C. §605(a) and §553(a)(1), which were specifically designed to prohibit the unauthorized reception of cable television programming.

20. Defendant **STEVEN KING** has purchased or otherwise obtained one or more "pirate" cable television descrambling and decoding devices and equipment.

21. Defendant has used the "pirate" converter-decoder and descrambling devices obtained to receive and intercept Plaintiff's cable television programming services without Plaintiff's authorization.

22. Each of the converter-decoders which the defendant obtained and thereafter used was modified to circumvent the security functions of Plaintiff's scrambling technology and possess the illicit function of descrambling all scrambled "premium" and "pay-per-view" cable television programming services available on Plaintiff's System without payment to, or authorization from, Plaintiff.

23. At all times, Defendant engaged in the unauthorized reception of Plaintiff's programming services with intent and specific knowledge that their respective use of such devices enable them to intercept and receive Plaintiff's cable television programming services without

Plaintiff's authorization and without having made payment to Plaintiff for reception of those programming services. Defendant's unauthorized reception of Plaintiff's cable television programming services has been ongoing and continuous since the date that Defendant obtained his "pirate" device. Defendant has engaged in the unauthorized reception of Plaintiff's programming services for the purposes of his/her private financial gain and has acted, at all times, willfully and deliberately.

**COUNT I**

**VIOLATIONS OF THE COMMUNICATIONS ACT OF 1934, AS AMENDED**

24. Plaintiff incorporates by reference paragraph "1" through "23," inclusive.

25. The "pirate" cable television converter-decoder devices used by Defendant were specifically designed to descramble Plaintiff's encoded signals, thereby permitting reception of Plaintiff's programming without payment for those services. Said conduct violates 47 U.S.C. §605(a) and §553(a)(1).

26. By using "pirate" cable television converter-decoders, defendant was able to view all of Plaintiff's premium, pay per view, and other scrambled programming without paying monthly or per event fees for said programming in violation of 47 U.S.C. §605(a) and §553(a)(1).

27. Plaintiff's cable television programming services are "radio communications" within the meaning of 47 U.S.C. §153(33) and are protected from unauthorized interception and reception under 47 U.S.C. §605(a) and §553(a)(1).

28. Defendant violated the Communications Act willfully and for purposes of their financial gain.

29. Plaintiff has not authorized or consented to the use of "pirate" converter-decoders by any Defendant herein, nor has Plaintiff authorized or consented to the rendering of assistance by Defendant in the reception or interception of Plaintiff's signals.

30. Plaintiff is a "person aggrieved" by Defendant's violations of the Communications Act, and Plaintiff is authorized to institute this action against Defendant under 47 U.S.C. §605(e)(3)(A) and §553(c)(1).

31. The violations of 47 U.S.C. §605(a) and §553(a)(1) committed by Defendant has injured and will continue to injure Plaintiff's ability to maximize its revenues by depriving it of the benefit of subscribers to its programming services and by injuring its goodwill and reputation. As a further result of such violations, Defendant has received and will continue to receive illegal and unjust gains by avoiding payment to Plaintiff for the reception of Plaintiff's premium, pay-per-view and other scrambled programming.

32. Moreover, honest paying subscribers may have their services negatively affected as a result of Defendant's violations.

33. Upon information and belief, unless restrained by this Court, Defendant herein will continue to violate 47 U.S.C. §605 and §553. Defendant has engaged in the unauthorized use of radio communications, conduct prohibited by 47 U.S.C. §605 and §553. Moreover, Defendant knew or should have known that the use of such unauthorized equipment was prohibited. Such violations of the Communications Act have caused and will continue to cause Plaintiff irreparable harm. Plaintiff cannot practicably determine the amount of lost revenues resulting from Defendant's unlawful conduct. In addition to diminishing Plaintiff's revenues, Defendant's unlawful conduct injures Plaintiff's reputation and goodwill, its ability to attract and finance the future acquisition of quality services, and further impairs its ability to enhance its future growth and profitability.

Furthermore, Lucas County loses franchise fees as a direct result of Defendant's misconduct.

34. Plaintiff has no adequate remedy at law to redress Defendant's violations of 47 U.S.C. §605 and §553.

WHEREFORE, Plaintiff requests that this Court grant the following relief:

(1) Declare that Defendant's unauthorized use of equipment designed to decode encrypted cable television signals violated 47 U.S.C. §605(a) and §553(a)(1) and that such violations were committed willfully and for purpose of Defendant's direct or indirect commercial advantage or private financial gain; and

(2) In accordance with 47 U.S.C. §605(e)(3)(B)(i) and §553(c)(2)(A) and O.R.C. Ann. §2307.62, enjoin Defendant, their agents, servants, employees, affiliated business entities, successors, assigns, and any entities or persons controlled directly or indirectly by any of them or acting on their behalf from the sale, modification and/or distribution of electronic equipment enabling the unauthorized interception of cable television programming services, from aiding and abetting or engaging in the interception, divulgence, reception or display of the cable television programming, service or signal of the plaintiff, whether transmitted by air or by cable, without the express authorization of the plaintiff, and from connecting, attaching, splicing into, tampering with or in any way using the Plaintiff's system for the purpose of obtaining any of Plaintiff's programming services without Plaintiff's express authorization, and from manufacturing, purchasing, obtaining, utilizing, installing, or possessing any device or equipment capable of descrambling, intercepting, receiving, decoding or in any way making available Plaintiff's programming and services without Plaintiff's authorization; and,

(3) In accordance with 47 U.S.C. §605(e)(3)(B)(ii), §605(e)(3)(c) and §553(c)(2)(B), award Plaintiff statutory damages in an amount of up to $110,000.00, assessed against the defendant(s), for each violation of 47 U.S.C. §605(a) and §553(a)(1), involving the unauthorized reception and interception of Plaintiff's cable television services, committed by Defendant(s); and,

(4) In accordance with 47 U.S.C. §553(c)(3)(B), award Plaintiff statutory damages in the amount of $50,000, assessed against Defendant for each violation of 47 U.S.C. §605(a) and §553(a)(1), involving the unauthorized reception and interception of Plaintiff's cable television services, committed by Defendant; and,

(5) In accordance with O.R.C. Ann. §2307.62, award exemplary damages in the amount of $10,000.00; and,

(6) In accordance with 47 U.S.C. §605 and §553, and O.R.C. Ann. §2307.62, direct Defendant to pay Plaintiff all of Plaintiff's costs, investigative expenses and reasonable attorneys' fees; and,

(7) Grant such other and further relief as is just and reasonable.

Dated: Ellenville, New York
September 24, 2004

**BUCKEYE CABLEVISION, INC.,**

BY:____________________________

WAYNE D. LONSTEIN, Esq
LONSTEIN LAW OFFICE, P.C.
Attorneys for Plaintiff
1 Terrace Hill, P.O. Box 351
Ellenville, NY 12428
(845) 647-8500
*Our File No. BUCK360*